## Fred Carmack and Junior Carmack, Trading as Carmack's Super Market, Appellees, v. Great American Indemnity Company, Appellant.

### Gen. No. 9,548.

Opinion filed October 29, 1947. Released for publication November 25, 1947.

CLARENCE W. HEYL, of Peoria, for appellant.

CHIPERFIELD & CHIPERFIELD, by FREDERICK O. MER-
CER and JAMES F. SCOTT, of Canton, for appellees.

MR. PRESIDING JUSTICE WHEAT delivered the opinion
of the court.

This is an action at law on a Standard Workmen's
Compensation and Employer's Liability insurance
policy, brought by Fred Carmack and Junior Carmack,
partners doing business as Carmack's Super Market,
the appellees herein, to recover the sum of $600 from
the Great American Indemnity Co., the appellant
herein. Upon hearing, judgment in the sum of $600
was entered against defendant appellant, from which
this appeal follows.

The case was heard before the trial court on stipu-
lated facts. It appeared that on April 19, 1943, appel-
lees were engaged in the retail grocery and meat busi-
ness in and about Canton, Illinois, and were operating
under the provisions of the Illinois Workmen's Com-
pensation Act. On that date, appellees had in their
employ one Glenn E. Jarrett, now deceased, who was
then under 15 years of age and who was illegally em-
ployed, in that appellees had made no effort to secure
a certificate as required by statute for employment of
a minor of that age. (Ch. 48, par. 31.9, Ill. Rev. Stat.
1945 [Jones Ill. Stats. Ann. 19.192 (9)].) On said
date, the said Jarrett sustained an accidental injury
which arose out of and in the course of his employ-
ment, and in direct consequence thereof, he died on
April 30, 1943. Deceased left him surviving his
mother, who, because of her partial dependency on the
earnings of deceased, became entitled to the sum of
$1,200, being the minimum compensation payable
under sec. 7(c) of the Illinois Workmen's Compensa-
tion Act, and, because of the age of the deceased and
the circumstances of his employment, became entitled

to $600 additional compensation under sec. 7(i) of the Illinois Workmen's Compensation Act. (Ch. 48, par. 144, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 143.22].)

A dispute having arisen concerning defendant's liability to pay the $600 additional compensation, it was agreed between the parties to this action that defendant should pay the sum of $1,200 and that plaintiffs should pay the sum of $600 to the mother of the deceased, which payments were made on June 29, 1943, in full satisfaction of a lump sum settlement approved and confirmed by the Illinois Industrial Commission on June 24, 1943.

These payments were made in accordance with and subject to the terms of a stipulation entered into on June 16, 1943, between the parties to this action, the parts of said stipulation here pertinent providing that the payment of the sum of $600 by appellees should be made

"with full reservation of rights to (appellees) and not be considered as a waiver of their right to claim reimbursement for payment of said sum from (appellant)"

and that the making of said settlement and stipulation should

"not be construed as a waiver of any rights of (appellant) with reference to its denial of liability for the additional compensation of 50% as provided by Section 7(i) of the Workmen's Compensation Act, on account of the illegal employment of the (deceased)."

That portion of the Standard Workmen's Compensation and Employer's Liability policy here in controversy provides as follows:

"The company does hereby agree with this employer . . . as respects personal injury sustained by employees, including death, at any time resulting therefrom as follows:

I.(a) To pay promptly to any person entitled thereto, under the Workmen's Compensation Law and in the manner therein provided, the entire amount of any sum due, and all installments thereof as they become due. . . .

It is agreed that all the provisions of each Workmen's Compensation Law covered hereby shall be and remain a part of this contract as fully and completely as if written herein. . . .

I.(b) To indemnify this employer against loss by reason of the liability imposed upon him by law for damages on account of such injuries to such of said employees as are legally employed . . ."

Defendant's first argument relied on for reversal is in substance as follows: Plaintiff must recover, if at all, under paragraph I(b) of the insurance contract, by the terms of which the insurer undertakes to indemnify the employer against loss for liability imposed on account of injuries to such employees as are *legally* employed. Since by plaintiffs' own admission the deceased was illegally employed, it is urged that plaintiffs have no standing to recover.

We have examined with care the following decisions cited by appellant in support of the foregoing proposition: *Rudy v. McCloskey & Co.,* 348 Pa. 401, 35 A. (2d) 250 (1914); *Miller Mfg. Co. v. Aetna Life Ins. Co.,* 150 Va. 495, 143 S. E. 747 (1928); *Goodwille v. London Guarantee & Accident Co.,* 108 Wis. 207, 84 N. W. 164 (1900); *Ocean Accident & Guaranty Corp., Ltd. of London, Eng. v. Washington Brick & Terra Cotta Co.,* 148 Va. 829, 139 S. E. 513; *Ocean Accident & Guaranty Corp. v. People's Wet Wash Laundry,* 92 N. H. 260, 29 A. (2d) 418 (1942).

We find in each of these cases that the action against the insurer was based upon paragraph I(b) of the Standard Policy, or the equivalent thereof, only. We may assume that the deceased in this case was not

"legally employed" within the meaning of those words as used in the insurance contract and that appellee cannot recover under paragraph I(b) of the Standard Policy for that reason.

However, after careful examination of the record, we do not agree with defendant's contention that plaintiffs' cause of action was based in the trial court upon paragraph I(b) of the policy, either solely or in part, or that it must be so based. Paragraph 7 of the complaint clearly indicates that the cause of action was a claim for reimbursement, or in other words, an action for damages resulting from defendant's breach of contract to pay to any person entitled thereto, under the Workmen's Compensation Law, the entire amount of any sum due to such person because of the obligation for compensation imposed upon plaintiffs under the Workmen's Compensation Law, as provided by the provisions of paragraph I(a) of the policy.

In various forms, defendant has argued that there can be no recovery by the employer in an action based on paragraph I(a) of the policy because that paragraph is a contract between the insured and the employee solely for the benefit of the employee. In this contention we find no merit whatever.

Patently, the whole of the insurance policy constitutes a contract between the employer and the insurance carrier. To say that paragraph I(a) is a contract for the benefit of a third person only, obstructs the issue. While payment of the award runs to the employee and in that sense benefits a third person, it is clearly a benefit to the employer as well. Indeed, it is his vital concern that such payment be made to save him from liability. (*Williston on Contracts*, section 380.) Defendant's failure to perform his obligation under paragraph I(a) has clearly resulted in damage to the plaintiff.

Counsel for plaintiffs have cited no Illinois cases, and we have found none in which the employer after

paying a part of the award has sought recovery thereof from the insurance carrier. As noted above, none of the cases cited for defendant are in point because in each the action was based on paragraph I(b) of the Standard Policy, or its equivalent. However, it appears that the principles laid down in two cases from other jurisdictions are relevant to the issue here involved. *Stuart v. Spencer Coal Co.,* 307 Mich. 685, 12 N. W. (2d) 443; and *Massachusetts Bonding & Insurance Co. v. Industrial Accident Commission,* 19 Cal. App. (2d) 583, 65 P. (2d) 1349, both involve actions by insurance carriers to have set aside awards made by Industrial Commissions to employees who were injured while employed in violation of penal statutes regulating conditions of labor.

In the former case, the insurer claimed that it should be liable for "single compensation" only and that the "double compensation," payable in case the injured was illegally employed, constituted a penalty for which the employer alone was liable. In deciding against the insurance carrier, the court held that the additional compensation, although payable because of the illegality of employment, was *not* a penalty and that the insurance carrier must pay the entire amount of the award as he contracted to do.

In the latter case, it was similarly argued that the additional compensation, because of the illegality of employment, was a penalty and that assessment of the additional compensation against the insurance carrier would, therefore, be contrary to public policy. The court found that the policy expressed in the act itself required the employer to secure payment of all compensation to persons entitled thereto and held the insurance carrier liable for the full amount, basing its decision squarely upon the carrier's agreement embodied in paragraph I(a) of the Standard Policy.

Defendant attempts to distinguish the decisions in these two cases by admitting that the insurance carrier

is liable to pay the entire award, including the additional compensation, in the first instance if the employer does not, and that it is not contrary to public policy for him to do so, but that once the employer has paid any portion of the award which is due because of the illegality of the employment, he should not, either as a matter of contract or as a matter of public policy, be able to recover that amount back from the insurance carrier.

There seems to be no sufficient reason in theory to distinguish the two situations, and as a practical matter, it seems of primary importance to the effective administration of the Compensation Act that the employer be allowed to recover any amounts he has paid which the insurance carrier, by defendant's admission, was liable to pay in the first instance.

This is particularly true in this case in view of the stipulation set forth above, into which the parties entered in connection with the settlement, and which settlement, by defendant's own interpretation of the stipulation was made "without prejudice to the rights of either plaintiffs or defendant." We believe that the intent of the parties in entering into this stipulation was to preserve the status which would have existed between employer and insured had the employer made no payment whatsoever.

We hold, therefore, that, subject to examination of appellant's public policy argument, appellee is entitled to recover the sum of $600 from appellant as damages resulting from appellant's breach of paragraph I(a) of the insurance contract.

Appellant further contends that even if plaintiffs should be found entitled to recover under the terms of the insurance contract, such recovery should not, as a matter of public policy, be allowed because the 50 per cent additional compensation is a penalty made payable by plaintiffs' violation of law. As heretofore noted, defendant has narrowed this issue further by

conceding that payment in the first instance of the increased compensation by the insurer would not be contrary to public policy, but that recovery of that amount from the insurer by the employer after the latter has paid is contrary to public policy.

The intent of the Legislature in enacting section 7(i) of the Compensation Act must be considered in order to determine whether compensation payable thereunder is in the nature of a penalty. This section provides:

"in case the injured employee is under 16 years of age at the time of the accident and is illegally employed, the amount of compensation payable under Paragraphs (a), (b), (c), (d) and (e) of this section shall be increased 50 per centum."

It should be noted that the "increased compensation" payable under this section is completely undifferentiated from compensation otherwise payable. It is also noteworthy that section 26(3) of the Workmen's Compensation Act provides that the employer's insurance policy must "insure his entire liability to pay such compensation." Clearly the policy must cover the employer's liability to pay increased compensation.

The preamble to the Compensation Act recites that the purpose thereof is

"to promote the general welfare . . . by providing compensation for accidental injuries or death suffered in the course of employment"

and makes no mention of any penal objective.

That the provisions of section 7(i) are distinct from the penal provisions of the Child Labor Law is suggested in the wording of that section which provides that nothing therein shall be construed to repeal or amend the provisions of the Child Labor Act. It is perhaps also significant that the Legislature did not provide, as did the Legislatures of New York and

Pennsylvania, that the liability for the additional compensation was to be borne by the employer only.

It is noteworthy that the New York Court of Appeals in *Bogartz v. Astor*, 293 N. Y. 563, 59 N. E. (2d) 246 (1944), has held that additional compensation provided for in similar circumstances by the New York statute is not a penalty upon the employer *despite the fact that the employer alone is liable for the payment thereof*.

There is indication that the provision for increased compensation was intended to compensate minors for relinquishing their common-law rights if they accepted the provisions of the act, and also to make the compensation, based on the relatively low wage of a minor, more nearly commensurate with his needs for the future.

This proposition gains support from the Illinois Supreme Court's decision in *Landry v. E. G. Shinner & Co., Inc.*, 344 Ill. 579, which holds that the Legislature intended that section 8(k) of the Compensation Act, the provisions of which very closely parallel those of section 7(i), should apply to *all* minors.

█ In view of these considerations, we cannot find that the 50 per cent increased compensation provided for in section 7(i) of the Compensation Act is essentially penal in nature.

█ In connection with appellant's public policy argument, it was MR. JUSTICE STORY's view that that which ''conflicts with the morals of the time and contravenes any established interest of society'' is contrary to public policy. In our view, the ''established interest of society,'' as indicated by the provisions of the Compensation Act, lies in ascertaining that compensation due thereunder be promptly paid; that payment thereof not depend upon the employer's solvency or his willingness to pay, and this in spite of the fact that he has violated the Child Labor Act; and that enforcement of the Child Labor Act be carried out

through the sanctions therein provided, and not through the bartering of compensation awards.

Defendant's motion before the trial court to amend his answer and include therein the above argument on the ground of public policy was denied by the trial court and this denial has been assigned as error. However, defendant has fully argued the public policy issue before this court and it has been carefully considered. There was no prejudicial error in the ruling of the trial court on this motion.

For the reasons above stated, the judgment of the trial court is affirmed.

*Affirmed.*